IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LORI WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **Civil Action No. 2:07-cv-2694** |
| HILTON HOTELS CORP. D/B/A HAMPTON INN, DOE PROFESSIONAL ENTITY D/B/A SCE PARTNERSHIP, and HOVHANNES PETROSYAN, | ) ) ) ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL**

Defendant Hilton Hotels Corp. d/b/a Hampton Inn ("Defendant") has received a copy of Plaintiff's Response in opposition to Defendant's Motion for Partial Dismissal. In that document, Plaintiff contends that her Second, Third, and Fourth causes of action should not be dismissed as against Defendant because: (1) Defendant's supervisors and managers were the alter ego of Defendant; (2) the Complaint raises a factual inference that Defendant's employee's acted with willful and specific intent to harm Plaintiff; and (3) that the exclusivity provisions of the South Carolina Workers' Compensation Act do not apply in this case because Defendant Petrosyan was not an employee of Defendant. The arguments advanced by Plaintiff are unavailing.

A.    **The Alter-Ego Exception to the Exclusivity Provisions is Inapplicable**

Plaintiff suggests that three of Defendant's employees, who admittedly are simply local supervisors in the housekeeping and maintenance departments of the hotel, may be "alter egos" of Defendant, thereby taking her claims outside the scope of the Act. This suggestion is contrary to established precedent. In *Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 218, 428

S.E.2d 700 (1993), the South Carolina Supreme Court held that "[i]t is only when the tortfeasor/co-employee is the 'alter ego' of the employer that liability falls outside the scope of the Act." 311 S.C. at 221, 428 S.E.2d at 701.  Explaining the concept of alter ego, the Court held that "only 'dominant corporate owners and officers' may constitute alter egos." *Id.* (citing 2A Larson, *Workmen's Compensation*, §§ 68.21 S.C. and 68.22).

Plaintiff's Complaint sets forth no basis to support the alter ego exception to workers' compensation exclusivity.  Indeed, the Complaint merely alleges that Althea Washington and Debra Williams were Plaintiff's supervisors in the housekeeping department and that Harold Washington was a supervisor in the maintenance department. (Complaint ¶¶ 5, 12, 16, 17, 18).  There is no factual allegation that even arguably suggests that any of the supervisors was a "dominant corporate owner [or] officer" of Defendant.

In *Taylor v. Cummins Atlantic, Inc.*, 852 F.Supp. 1279 (D.S.C. 1994), the plaintiff brought several causes of action against his former employer, including a claim for intentional infliction of emotional distress.  The employer argued that the claim was precluded by the workers' compensation statute.  Judge Shedd agreed with the employer, stating:

> Defendant cites *Dickert v. Metropolitan Life Insurance Company*, 428 S.E.2d 700 (S.C. 1993), in which the South Carolina Supreme Court reaffirmed the principle that "an employee's action against a company for intentional infliction of emotional distress ... [is] within the scope of the [Workers' Compensation] Act since [it] arises from personal injury." *Id.* at 701.  The *Dickert* court noted that "it is only when the tortfeasor/co-employee is the 'alter ego' of the employer that liability falls outside the scope of the Act." *Id.*  With these principles in mind, the *Dickert* court "<u>declined to extend the definition of alter ego to supervisory employees</u> ... and held that only 'dominant corporate owners and officers' may constitute alter egos." *Id.*

\* \* \*

> In light of *Dickert*, the Court concludes that plaintiff's claim for outrage must fail. Plaintiff has made no showing that the alleged outrageous conduct was committed by a "dominant corporate owner" of defendant. ... Because plaintiff has failed to set forth facts to remove this case from the holding of *Dickert*, [the claim must fail as a matter of law].

852 F.Supp. at 1282-83 (emphasis added). On this basis, Plaintiff's suggestion that supervisors at the hotel were alter egos of Defendant is without merit.

**B.     The Deliberate Injury Exception to the Exclusivity Provisions is Inapplicable**

Plaintiff next cites the South Carolina Supreme Court's decision in *Peay v. U. S. Silica Co.*, 313 S.C. 91, 437 S.E.2d 64 (1993), for the proposition that the deliberate injury exception takes this case out of the exclusive coverage of the Workers' Compensation Act.

Seven months after issuing its decision in *Dickert*, the S. C. Supreme Court issued its decision in the *Peay* case. In *Peay*, the court addressed only this narrow certified question from this Court:

> When a statutory employee has drawn benefits under the Workers' Compensation System, can an "owner" as defined by S.C. Code Ann. Section 42-1-400, who has intentionally exposed that statutory employee to a hazardous substance that was substantially certain to cause the employee harm, claim the protection of the exclusive remedy provision of the Workers' Compensation System, or would the holding of *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), be applied, allowing the employee to also bring suit at common law for intentional tort against the owner?

437 S.E.2d at 64.

Notably, the question before the court was <u>not</u> whether an employee's claim for intentional infliction of emotional distress could be maintained outside of the workers' compensation arena. Instead, as even a casual reading of the decision reveals, the court was asked to determine whether an employer's "intent" in exposing an employee to a hazardous

- 3 -

substance could be gauged simply by reference to the nature of the substance itself, as the North Carolina Supreme Court allowed in *Woodson*, or whether the intentional injury provisions of the South Carolina workers' compensation statute required a more rigorous showing of "intent" before a claim could be deemed to fall outside of the exclusivity provision.  The court concluded that, given South Carolina's strong policy in favor of workers' compensation coverage, North Carolina's "substantial certainty" rule was too liberal.  Accordingly, it answered the certified question by ruling that "Consequently, we decline to follow North Carolina's adoption of the substantial certainty standard ... ."

Because the certified question before the *Peay* court was so narrow and did not involve an employee's claim for intentional infliction of emotional distress, it is not surprising that the court made no attempt to overrule *Dickert* and *Loges v. Mack Trucks*, 308 S.C. 134, 417 S.E.2d 538 (1992), as it would have had to do in order to reach the result now suggested by Plaintiff in this case.  In fact, the only reference to *Dickert* in the *Peay* decision is in a footnote, where the court points out that its ruling is consistent with the standard for injuries intentionally inflicted by a co-employee.  437 S.E.2d at 66 n1.

In *Edens v. Bellini, et al.*, 359 S.C. 433, 597 S.E.2d 863 (Ct. App. 2004), the South Carolina Court of Appeals addressed the deliberate harm exception to exclusivity.  In rejecting the plaintiff's attempt to pursue a negligence cause of action, the court explained the "*deliberate* intent" aspect of the exception.  Quoting Professor Larson's treatise on Workers' Compensation law, the court observed:

> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, **the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious**

> **negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury.**
>
> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, willfully failing to furnish a safe place to work, willfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character.
>
> * * * * *
>
> If these decisions seem rather strict, one must remind oneself that **what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of the intentional versus the accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.**

359 S.C. at 448, 597 S.E.2d at 871 (quoting 6 Arthur Larson & Lex K. Larson, <u>Larson's Workers' Compensation Law</u> § 103.03 (2002) (emphasis added and footnotes omitted by court).

In this case, the Complaint does not allege that Defendant or any of its supervisors or managers had a deliberate or specific intent to injure Plaintiff in the manner in which she alleges she was injured. Instead, she mistakenly focuses on her allegations of the gravity of the alleged misconduct. On the basis of Professor Larson's treatise, as quoted in *Edens*, none of the facts alleged by Plaintiff would, as a matter of law, rise to the level of suggesting the actual intention to injure that would rob any alleged injury of its accidental character. Thus, Plaintiff's suggestion that the deliberate harm exception applies is incorrect.

**C.     The Subcontractor Exception to the Exclusivity Provisions is Inapplicable**

Plaintiff's final suggestion is that the exclusive coverage provisions of the Workers' Compensation Act are inapplicable because Defendant Petrosyan was not employed by Defendant. Plaintiff's position is contrary to her own Complaint.

Although it is clear that Plaintiff is attempting to hedge her bets as to Petrosyan's employment status, the Complaint expressly alleges, *inter alia*: (1) that Petrosyan wore a "Hampton Inn" uniform provided by Defendant (¶11); (2) that Petrosyan reported to and was directly supervised by Defendant's maintenance supervisor (¶12, 35); (3) that Petrosyan acted at all relevant times " . . . as an employee and/or agent for Defendant Hampton Inn" (¶13); (4) that Defendant "hired" Petrosyan (¶68(d)); (5) that Defendant "supervised" Petrosyan (¶68(l)); (6) that Defendant "retained" Petrosyan (¶68(o)); (7) that Defendant was at least a joint employer of Petrosyan (¶73, 75); (8) that Petrosyan had an "employment relationship with Defendant" (¶74); and (9) that Defendant "continued" its employment of Petrosyan (¶78(b), (h)). Indeed, while the exception urged by Plaintiff requires that the party causing the injury be an independent contractor, the nature of the Complaint's allegations are utterly inconsistent with that concept.

Having gone to great lengths in the Complaint to attribute virtually every vestige of an employment relationship to Defendant's relationship with Petrosyan, Plaintiff cannot now disavow those same allegations in order to avoid a legal result that is consistent with virtually every relevant allegation in her Complaint. Thus, Plaintiff's suggestion that the subcontractor exception applies to this case should be rejected.

**D.     Conclusion**

Plaintiff asks this Court to rewrite state tort law in a way that the S. C. Supreme Court has elected not to do. That the Plaintiff may have included several tort claims in her

Complaint is of no consequence.  Merely pleading the elements of a tort cannot remove it from the ambit of the exclusivity provisions of the Act.  The exception would always swallow the rule.  That is especially true where, as here, a reasonable reading of the Complaint reveals numerous allegations that are antithetical to the exceptions being urged.

Accordingly, Defendant's Motion for Partial Dismissal should be granted.

DATED this 24th day of September, 2007.

Respectfully submitted:

/s/ *Paul H. Derrick*
Paul H. Derrick, Fed. ID No. 6734
JACKSON LEWIS LLP
1400 Crescent Green, Suite 320
Cary, North Carolina 27518
Telephone:     (919) 854-0044
Facsimile:      (919) 854-0908

ATTORNEYS FOR DEFENDANT
HILTON HOTELS CORP. d/b/a HAMPTON INN

- 8 -

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing *Motion for Partial Dismissal* was served on counsel of record by electronic means through the Court's transmission facilities:

Brian D. Phelan
192 East Bay Street, Suite 303
Charleston, South Carolina 29401

/s/ *Paul H. Derrick*
Paul H. Derrick, Fed. ID No. 6734
JACKSON LEWIS LLP
1400 Crescent Green, Suite 320
Cary, North Carolina 27518
Telephone:   (919) 854-0044
Facsimile:   (919) 854-0908