In the District Court of the United States
For the District of South Carolina
CHARLESTON DIVISION

| | |
|---|---|
| Lori Washington,        )<br>                         )<br>        Plaintiff,     )<br>                         )<br>vs.                      )<br>                         )<br>Hilton Hotels Corp. d/b/a )<br>Hampton Inn,            )<br>Doe Professional Entity d/b/a/ )<br>SCE Partnership, and    )<br>Hovhannes Petrosyan,     )<br>                         )<br>        Defendants.    )<br>_____) | Civil Action No.  2:07-2694-CWH-GCK<br><br><br>**REPORT AND RECOMMENDATION<br>OF THE MAGISTRATE JUDGE** |

## I.   INTRODUCTION

The Plaintiff, Lori Washington ("Plaintiff" or "Washington"), initially brought this action against the above captioned defendants, Hilton Hotels Corp. d/b/a Hampton Inn, Doe Professional Entity d/b/a SCE Partnership, and Hovhannes Petrosyan in the Court of Common Pleas for the Ninth Judicial Circuit, Charleston County, South Carolina, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

On August 2, 2007, the Defendant Hilton Hotels Corp. d/b/a Hampton Inn ("Hampton Inn") timely removed this civil case to this court on the grounds of both federal question and diversity jurisdiction.  [1]  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B), and Local Rule 73.02(B)(2)(g), D.S.C., this case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings.

Plaintiff's Complaint alleged four causes of action against Hampton Inn:  (1) Title VII gender discrimination; (2) negligence; (3) negligent hiring, supervision and retention; and (4)

infliction of emotional distress. [1-1] Hampton Inn filed a Motion for Partial Dismissal pursuant to Fed.R.Civ.P. 12(b)(6) (the "Motion for Partial Dismissal"), contending that Plaintiff's claims for negligence; negligent hiring, supervision and retention; and infliction of emotional distress were are preempted, as a matter of law, by the South Carolina Workers' Compensation Act, South Carolina Code Ann. § 42-1-10 et seq. (the "Act"). [10] Plaintiff filed a response in opposition to Hampton Inn's Motion for Partial Dismissal [13], and Hampton Inn filed a reply. [15] Thus, this matter is ripe for review.

## II.  STANDARD FOR DETERMINING A MOTION TO DISMISS

This court will consider Hampton Inn's Motion for Partial Dismissal pursuant to Rule 12(b)(6) in light of the notice pleading rules as set forth in the Federal Rules of Civil Procedure, and at this juncture construe all facts as alleged in Plaintiff's complaint in her favor. As the Supreme Court has admonished, the requirements of notice pleading are not onerous. *See Swierkiewicz v. Sorema, N.A*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).  In *Swierkiewicz*, a unanimous Supreme Court held that a complaint in an employment discrimination lawsuit need not allege facts sufficient to establish a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in order to survive a motion to dismiss.  *Swierkiewicz*, 534 U.S. at 510.  Instead, the "ordinary rules for assessing the sufficiency of a complaint" under Fed. R. Civ. P. 8(a) apply. *Swierkiewicz*, 534 U.S. at 512.  Since 1938, when the "short and plain statement" standard was adopted and set out by Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff simply has had the duty to put the defendant on notice of the nature of his claims.  This standard has been emphasized by the Supreme Court in *Swierkiewicz*.  The well-established principle of Rule

8 must be observed in the interests of fundamental fairness to the litigants as well as with respect to matters of judicial economy. Obviously, the best use of judicial resources can be achieved only upon the presentation of motions that are filed after a thorough investigation of all issues and based upon the evidence developed through discovery. Therefore, at the pleading stage, Plaintiff's Complaint must be analyzed solely to determine whether she has adequately put the Defendant Hampton Inn Hotel on notice of her claims. "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz*, 534 U.S. at 512, *quoting Conley v. Gibson*, 335 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Applying the simplified notice pleading standard set forth in Rule 8(a) and as recently emphasized by *Swierkiewicz*, "'[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be provided consistent with the allegations.'" *Swierkiewicz*, 534 U.S. at 514, *quoting Hishon v. King & Spalding*, 457 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). As *Swierkiewicz* teaches, Rule 8(a) establishes a pleading standard at the outset of a lawsuit "without regard to whether a claim will succeed on the merits." *Swierkiewicz*, 534 U.S. at 515. " 'Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.' " *Swierkiewicz*, 534 U.S. at 515, *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### III.   DISCUSSION

#### A.  The Facts As Alleged by Plaintiff

The relevant facts as alleged in the Complaint for the purposes of Hampton Inn's Motion

for Partial Dismissal are set forth by the Plaintiff as follows:[1]

Hilton is the owner and operator of Hampton Inn in Mount Pleasant, South Carolina. Plaintiff worked at Hampton Inn as a housekeeper from April 2004 to July 2004.  ([1-1] at ¶19). Plaintiff was supervised by Althea Washington and Debra Williams ("Ms. Washington" and "Ms. Williams").  ([1-1] at ¶ 5).  Defendant Hovhannes Petrosyan ("Petrosyan"), who performed maintenance at the Hampton Inn, was either an employee of Hampton Inn or of Defendant Doe Professional Entity d/b/a SCE Partnership ("SCE").  ([1-1] at ¶ 10).  Petrosyan performed maintenance at the Hampton Inn pursuant to an "agreement, contract or joint venture" between Hampton Inn and SCE.  ([1-1] at ¶ 20).  Petrosyan's supervisor, Harold Washington ("Mr. Washington"), was an employee of either Hampton Inn or SCE.  ([1-1] at ¶¶ 12, 18).

In about April 2004, Plaintiff reported sexual advances by Petrosyan to her supervisors Ms. Washington and Ms. Williams.  ([1-1] at ¶¶ 22, 23).  Ms. Washington, Ms. Williams and Mr. Washington intentionally encouraged and facilitated Petrosyan's sexual advances towards Plaintiff by ridiculing Plaintiff and by encouraging Petrosyan's behavior.  ([1-1] at ¶ 26).  During the time they ridiculed and encouraged Petrosyan, Ms. Washington, Ms. Williams and Mr. Washington had observed and were personally aware of Petrosyan's behavior towards Plaintiff. ([1-1] at ¶ 29).  Ms. Washington, Ms. Williams and Mr. Washington were aware that Plaintiff did not welcome Petrosyan's sexual advances towards her.  ([1-1] at ¶ 30).  Despite Plaintiff's express complaints of Petrosyan's open and wrongful behavior towards her, Hampton Inn failed to take any action whatsoever to stop Petrosyan's harassment of Plaintiff.  ([1-1] at ¶ 31). Plaintiff specifically asked her supervisors to stop encouraging Petrosyan; however, Ms.

---

[1]     Plaintiff set forth this summary in her Response in Opposition to the Motion for Partial Dismissal.  See [13] at pp. 2-3.

Washington, Ms. Williams and Mr. Washington continued to tease Plaintiff about the situation and encourage Petrosyan's advances.  ([1-1] at ¶ 33).

On or about July 22, 2004, Plaintiff was instructed to work with Petrosyan in unsupervised, vacant hotel rooms.  ([1-1] at ¶ 34).  Plaintiff specifically informed Mr. Washington that she was uncomfortable with working with Petrosyan and requested she be assigned a different maintenance man.  ([1-1] at ¶ 35).  Despite this request, Plaintiff was instructed and required to work with Petrosyan.  ([1-1] at ¶ 36).  Shortly thereafter, Petrosyan attempted to kiss Plaintiff and told her to get on a bed in a room of the Hampton Inn.  ([1-1] at ¶ 37).  Plaintiff reported Petrosyan's acts to Mr. Washington, who disregarded her complaint, forcing Plaintiff to continue working in unsupervised and unoccupied hotel rooms with Petrosyan.  ([1-1] at ¶¶ 38, 39).  Later the same day, Petrosyan grabbed Plaintiff, started kissing her, touched her breasts and openly attempted to engage in a sexual act with her.  ([1-1] at ¶40).  Plaintiff's Second, Third and Fourth causes of action arise out of the actions of Hampton Inn's employees, who supervised Plaintiff beginning in April 2004,  through the assault on Plaintiff on July 22, 2004.  The facts as alleged in the complaint, and taken in the light most favorable to Plaintiff with all reasonable inferences from the facts in Plaintiff's favor demonstrate that Hampton Inn's employees and/or supervisors not only knew of Petrosyan's sexual advances towards Plaintiff from her complaints and through personal observation, but that those supervisors expressly disregarded Plaintiff's complaints and requests for protection from Petrosyan and intentionally, actively and specifically encouraged Petrosyan to continue sexual advances towards Plaintiff.

### B.  Hampton Inn's Motion to Dismiss

As mentioned above, Hampton Inn has moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Plaintiff's Second Cause of Action (for negligence); Third Cause of Action (for negligent hiring, supervision, and retention), and Fourth Cause of Action (infliction of emotional distress) on the grounds those claims are preempted, as a matter of law, by the Act. The relevant portion of the Act (S .C. Code Ann. § 42-1-540) provides:

> <u>The rights and remedies granted</u> by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, <u>shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death</u>.
>
> Provided, however, this limitation of actions shall not apply to injuries resulting from acts of a subcontractor of the employer or his employees or bar actions by an employee of one subcontractor against another subcontractor or his employees when both subcontractors are hired by a common employer.

(Emphasis supplied by the undersigned).

South Carolina courts applying S.C. Code Ann. § 42-1-540 have held that an employee's claims against an employer for personal injury by negligence or as the result of an intentional tort are barred by the exclusive remedy provided under the Act. *Dickert v. Metropolitan Life Ins. Co.*, 306 S.C. 311, 411 S.E.2d 672 (S.C.App. 1991), *aff'd in part and rev'd on other grounds in part*, 311 S.C. 218, 428 S.E.2d 700 (S.C. 1993) (the Act provides exclusive remedy for work-related injuries; claims for negligence, including hiring, retention, and supervision, and emotional distress are covered by the Act); *Taylor v. Cummings Atlantic, Inc.*, 852 F.Supp. 1279 (D.S.C. 1994), *aff'd*, 1995 WL 88957, 48 F.3d 1217 (4th Cir. March 6, 1995) [Table], *cert. denied*, 516 U.S. 864, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995) (The Act provided former employee with exclusive remedy against employer for claim of intentional infliction of emotional distress); *Peay v. U.S. Silica Co.*, 313 S.C. 91, 437 S.E.2d 64 (S.C. 1993) ("only those injuries inflicted by an employer who acts with a deliberate or specific intent to injure are

exempted from the exclusive remedy of the workers' compensation coverage."); *see also Palmer v. House of Blues Myrtle Beach Restaurant Corp.*, 2006 U.S. Dist. Lexis 67593, at *4-5 (D.S.C. Sept. 20, 2006) (under South Carolina law, claims for intentional infliction of emotional distress and those based on negligence constitute personal injuries within the exclusive coverage of the Act).

It appears to the Court that Plaintiff's Second, Third, and Fourth Causes of Action, alleging negligence-based claims, as well as the tort of infliction of emotional distress (Compl. at ¶¶ 65-86) would be pre-empted by the Act, unless an exception to the Act applies. The Supreme Court of South Carolina recently reiterated that the only exceptions to the Act's exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations. *Cason v. Duke Energy Corp.*, 348 S.C. 544, 560 S.E.2d 891, 893 (S.C. 2002).

### The Intentional Act Exception and the Definition of "Alter Ego":

In opposition to Hampton Inn's Motion for Partial Dismissal, the Plaintiff argues, first, that Ms. Washington, Ms. Williams, and Mr. Washington were the "alter egos" of Hampton Inn, resulting in her claims being outside the scope of the Act. ([13] at p. 5). The "alter-ego" exception was first recognized in *Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 218, 220, 428 S.E.2d 700, 701 (1993). The Court defined "alter ego" as "dominant corporate owners and officers" who may constitute alter egos. *Id*. at 221, 428 S.E.2d at 701.

Hampton Inn argues that this claim is barred by the exclusivity provision of the Act,

because ; as discussed above, pursuant to the Act, claims of intentional torts fall within the scope of the Act except where the "tortfeasor/co-employee is the 'alter ego' of the employer....". *Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700, 701 (S.C. 1993); *see Loges v. Mack Trucks, Inc.*, 308 S.C. 134, 417 S.E.2d 538, 540 (S.C. 1992); *Palmer v. House of Blues Myrtle Beach Restaurant Corp.*, No. 05-3301, 2006 WL 2708278 (D.S.C. Sept. 20, 2006). Only " 'dominant corporate owners and officers' may constitute alter egos." *Dickert*, 311 S.C. 218, 428 S.E.2d at 701. The definition of alter ego does not include "supervisory employees." *Dickert*, 428 S.E.2d at 701 (citing 2A Larson, Workmen's Compensation, §§ 68.21 S.C. and 68.22).

Plaintiff's Complaint alleges that Ms. Washington and Ms. Williams were (1) Plaintiff's supervisors in the housekeeping department and (2) Hampton Inn's agents and/or employees and were acting in the scope of that employment and/or agency. (Compl. at ¶¶ 5, 16, 17). Plaintiff further alleges that Mr. Washington (1) was a supervisor in the maintenance department and (2) an agent and/or employee of SCE Partnership and/or Hampton Inn, and that he was acting in the scope of that employment and/or agency. (Compl. at ¶¶ 5, 12, 18). Nowhere in Plaintiff's Complaint is there any allegation to suggest that any of the supervisors was a "dominant corporate owner [or] officer" of Hampton Inn.

In *Taylor v. Cummins Atlantic, Inc.*, 852 F.Supp. 1279 (D.S.C. 1994), the plaintiff brought several causes of action against his former employer, including a claim for intentional infliction of emotional distress. The employer argued that the claim was precluded by the workers' compensation statute. Judge Shedd agreed with the employer, stating:

> Defendant cites *Dickert v. Metropolitan Life Insurance Company*, 428 S.E.2d 700 (S.C. 1993), in which the South Carolina Supreme Court reaffirmed the principle that "an employee's action against a company for intentional infliction of emotional distress . . . [is] within the scope of the

> [Workers' Compensation] Act since [it] arises from personal injury." *Id.* at 701.  The *Dickert* court noted that "it is only when the tortfeasor/co-employee is the 'alter ego' of the employer that liability falls outside the scope of the Act." *Id.*  With these principles in mind, the *Dickert* court "<u>declined to extend the definition of alter ego to supervisory employees</u> . . . and held that only 'dominant corporate owners and officers' may constitute alter egos." *Id.*
>
> . . . .
>
> In light of *Dickert*, the Court concludes that plaintiff's claim for outrage must fail.  Plaintiff has made no showing that the alleged outrageous conduct was committed by a "dominant corporate owner" of defendant. . . . Because plaintiff has failed to set forth facts to remove this case from the holding of *Dickert*, [the claim must fail as a matter of law].

852 F.Supp. at 1282-83 (emphasis added).  Based upon Judge Shedd's reasoning in *Taylor*, Plaintiff's argument that the supervisors at Hampton Inn hotel were alter egos of Hampton Inn is without merit.

### The Intentional Act Exception:  What Constitutes and Intentional Act?

Plaintiff's Complaint alleges that her supervisors at the Hampton Inn (Ms. Washington, Ms. Williams, and Mr. Washington) ridiculed Plaintiff for her repeated complaints of unwanted sexual advances by Petrosyan; and her supervisors encouraged Petrosyan to continue his sexual advances.  Plaintiff alleges that taking these allegations in the light most favorable to her, these intentional acts raise a factual inference of specific intent to harm Plaintiff in the manner alleged in her Complaint.  Plaintiff argues further that Washington's failure to address Plaintiff's specific request that Petrosyan be moved from her floor because of Petrosyan had grabbed her, attempted to kiss her and told her to get on the bed on July 22, 2004, raises a factual inference that Washington actually intended what occurred that same day – Petrosyan's physical assault on Plaintiff.  (Compl. ¶¶37-40).  Based upon these allegations, with reasonable inferences in the light most favorable to Plaintiff, Ms. Washington, Ms. Williams, and Mr. Washington acted with the specific intent to harm Plaintiff as alleged in the Complaint, precluding the application of

S.C. Code Ann. § 42-1-540 to Plaintiff's Second, Third and Fourth causes of action.  Plaintiff relies on *Peay v. U. S. Silica Co.*, 313 S.C. 91, 437 S.E.2d 64 (1993), for the proposition that "a common law cause of action is not barred by section 42-1-540 if the employer acted with a deliberate or specific intent to injure the employee."  *Peay v. U.S. Silica Co.*, 313 S.C. at 93, 437 S.E. 2d at 65, *citing McSwain v. Shei*, 304 S.C. 25, 402 S.E.2d 890 (1991).  However, the holding of *Peay* is inapposite to the facts of this case, because *Peay* did not involve an employee's claims of negligence or for intentional infliction of emotional distress.  *Peay* addressed a certified question from the District Court as follows:

> When a statutory employee has drawn benefits under the Workers' Compensation System, can an "owner" as defined by S.C. Code Ann. Section 42-1-400, who has intentionally exposed that statutory employee to a hazardous substance that was substantially certain to cause the employee harm, claim the protection of the exclusive remedy provision of the Workers' Compensation System, or would the holding of *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), be applied, allowing the employee to also bring suit at common law for intentional tort against the owner?

437 S.E.2d at 64.

In *Peay*, the state supreme court was asked to determine whether an employer's "intent" in exposing an employee to a hazardous substance could be gauged simply by reference to the nature of the substance itself, as the North Carolina Supreme Court allowed in *Woodson*, or whether the intentional injury provisions of the South Carolina workers' compensation statute required a more rigorous showing of "intent" before a claim could be deemed to fall outside of the exclusivity provision.  The court concluded, given South Carolina's strong policy in favor of workers' compensation coverage, that North Carolina's "substantial certainty" rule was too liberal.  Accordingly, it answered the certified question by ruling that "Consequently, we decline to follow North Carolina's adoption of the substantial certainty standard[.]"  *Id.*  Thus, Plaintiff's reliance on *Peay* is not persuasive.

It is true that an exception to the Act's exclusivity provision exists where the injury is not accidental but rather results from the intentional act of the employer or its alter ego. *Edens v. Bellini*, 359 S.C. 433, 445, 597 S.E.2d 863 (Ct. App. 2004), *citing Cason v. Duke Energy Corp.*, 348 S.C. 544, 560 S.E.2d 891 (2002); *Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700 (1993). In *Edens v. Bellini, et al.*, 359 S.C. 433, 597 S.E.2d 863 (Ct. App. 2004), the South Carolina Court of Appeals addressed the deliberate harm exception to exclusivity. In rejecting the plaintiff's attempt to pursue a negligence cause of action, the court explained the "deliberate intent" aspect of the exception. Quoting Professor Larson's treatise on Workers' Compensation law, the court observed:

> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury.
>
> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, willfully failing to furnish a safe place to work, willfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character.
>
> * * * * *
>
> If these decisions seem rather strict, one must remind oneself that what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of the intentional versus the accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

359 S.C. at 448, 597 S.E.2d at 871 (quoting 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 103.03 (2002) (emphasis added and footnotes omitted by court).

On the basis of Professor Larson's treatise, as quoted in *Edens*, none of the facts alleged

by Plaintiff would, as a matter of law, rise to the level of suggesting the actual intention to injure that would rob any alleged injury of its accidental character.  Thus, Plaintiff's suggestion that the deliberate harm exception applies is incorrect.

### The Subcontractor Exception:  The injury results from the act of a subcontractor who is not the injured person's direct employer

Plaintiff has alleged that Petrosyan was employed by SCE or by Hampton Inn, or by both (Compl. at ¶ 10); and Petrosyan was working on the premises of Hampton Inn pursuant to "an agreement, contract or joint venture" between SCE and Hampton Inn.  (Compl. at ¶ 20).

In order to fall within the exception to the Act, the Plaintiff must allege that Petrosyan was *not* employed by Hampton Inn.  However, the Complaint expressly alleges: (1) that Petrosyan wore a "Hampton Inn" uniform provided by Defendant (Compl. at ¶ 11); (2) that Petrosyan reported to and was directly supervised by Defendant's maintenance supervisor (Compl. at ¶¶ 12, 35); (3) that Petrosyan acted at all relevant times " . . . as an employee and/or agent for Defendant Hampton Inn" (Compl. at ¶ 13); (4) that Hampton Inn "hired" Petrosyan (Compl. at ¶ 68(d)); (5) that Hampton Inn "supervised" Petrosyan (Compl. at ¶ 68(l)); (6) that Hampton Inn "retained" Petrosyan (Compl. at ¶ 68(o)); (7) that Defendant was at least a joint employer of Petrosyan (Compl. at ¶¶ 73, 75); (8) that Petrosyan had an "employment relationship with [Hampton Inn]" (Compl. at ¶ 74); and (9) that Hampton Inn "continued" its employment of Petrosyan (Compl. at ¶ 78(b), (h)).  Thus, Plaintiff's allegations in her Complaint do not support her argument that Petrosyan was an independent contractor.  Instead, the weight of the allegations indicate that Petrosyan was just another employee of Hampton Inn.  Plaintiff's suggestion that the subcontractor exception applies to this case is not persuasive.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Hampton Inn's **Motion for Partial Dismissal [10] should be granted**.[2]

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

January 14, 2008

Charleston, South Carolina

---

[2] Counsel for Hampton Inn has requested that the Court award Hampton Inn reasonable costs and attorney's fees expended in preparing and submitting the Motion for Partial Dismissal. ([10] at p. 3). The Court will decline to do so.